**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, et al., | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CASE NO. 2:15-CV-1414-JRG |
| SALLY BEAUTY HOLDINGS, INC., et al., | § § § | |
| *Defendants*. | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC's Opening Claim Construction Brief (Dkt. No. 58), Defendants' response (Dkt. No. 61), and Plaintiffs' reply (Dkt. No. 62).

The Court held a claim construction hearing on July 1, 2016.

### Table of Contents

I.  BACKGROUND ..................................................................................................... 2

II.  LEGAL PRINCIPLES ......................................................................................... 2

III.  CONSTRUCTION OF AGREED TERMS ........................................................ 6

IV.  CONSTRUCTION OF DISPUTED TERMS ..................................................... 7

    A.  "transaction information" .............................................................................. 7

    B.  "nonpredictable bar code" ........................................................................... 10

    C.  "private transactional data" ......................................................................... 15

    D.  "spending habit data" and "promotion data" ............................................... 19

V.  CONCLUSION .................................................................................................... 19

## I.  BACKGROUND

Plaintiffs filed suit alleging infringement of United States Patents No. 5,969,324 ("the

'324 Patent"), RE43,715 ("the '715 Patent"), and 6,633,900.  (Dkt. Nos. 1-1, 1-2 & 1-3.)  Only

the '324 Patent and the '715 Patent are at issue in the present claim construction proceedings.

The '324 Patent, titled "Accounting Methods and Systems Using Transaction Information

Associated with a Nonpredictable Bar Code," issued on October 19, 1999, and bears a filing date

of April 10, 1997.  The Abstract states:

> An accounting system includes a point of sale terminal (20) to print a transaction
> receipt (26) having a nonpredictable bar code (36) and human-readable
> transaction information (34) based upon the transaction data.  The point of sale
> terminal (20) communicates the transaction information to a transaction
> information system.  The transaction information is downloaded from the
> transaction information system by reading the nonpredictable bar code (36) with a
> data reader (54).

The '715 Patent, titled "System and Method for Integrating Public and Private Data,"

issued on October 2, 2012, and bears an earliest priority date of June 28, 2000.  The Abstract

states:

> A system and method for allowing an Internet user to create a web page which
> may simultaneously display public and private data as integrated data on one
> digital screen or other network interface device.  Integrated data may derive from
> at least one internal content provider, but may also include data from one or more
> external content providers.  The invention also allows an internal content provider
> to create a personal profile of a user, based on proprietary data stores of the
> internal content provider and/or on the user's choices of data for viewing on a
> web page.  Finally, the invention allows an internal content provider to use the
> personal profile to personalize the user's experience on the provider's web site.

## II.  LEGAL PRINCIPLES

It is understood that "[a] claim in a patent provides the metes and bounds of the right

which the patent confers on the patentee to exclude others from making, using or selling the

protected invention."  *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed.

Cir. 1999). Claim construction is clearly an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

"In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015) (citation omitted). "In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the 'evidentiary underpinnings' of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal." *Id.* (citing 517 U.S. 370).

To ascertain the meaning of claims, courts look to three primary sources: the claims, the specification, and the prosecution history. *Markman*, 52 F.3d at 979. The specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. *Id.* A patent's claims must be read in view of the specification, of which they are a part. *Id.* For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims. *Id.* "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of the patentee's invention. Otherwise, there would be no need for claims. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc). The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the

specification. *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). Although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This Court's claim construction analysis is substantially guided by the Federal Circuit's decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). In *Phillips*, the court set forth several guideposts that courts should follow when construing claims. In particular, the court reiterated that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." 415 F.3d at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To that end, the words used in a claim are generally given their ordinary and customary meaning. *Id.* The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1313. This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention and that patents are addressed to, and intended to be read by, others skilled in the particular art. *Id.*

Despite the importance of claim terms, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument." *Id.* at 1315 (quoting *Markman*, 52 F.3d at 978). Thus, the *Phillips* court emphasized the specification as

being the primary basis for construing the claims. *Id.* at 1314-17. As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878). In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*Phillips*, 415 F.3d at 1316. Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation. Like the specification, the prosecution history helps to demonstrate how the inventor and the United States Patent and Trademark Office ("PTO") understood the patent. *Id.* at 1317. Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings. *Id.* Nevertheless, the prosecution history is intrinsic evidence that is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims. *Id.*; *see Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) (noting that "a patentee's statements during prosecution, whether relied on by the examiner or not, are relevant to claim interpretation").

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony. The *en banc* court condemned the suggestion made by *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes. *Phillips*, 415 F.3d at 1319-24. According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." *Id.* at 1321. *Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter. *Id.*

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. Instead, the court assigned dictionaries a role subordinate to the intrinsic record. In doing so, the court emphasized that claim construction issues are not resolved by any magic formula. The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language. *Id.* at 1323-25. Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant.

## III. CONSTRUCTION OF AGREED TERMS

The Court hereby adopts the following agreed constructions:

| Term | Agreed Construction |
|---|---|
| "pseudorandom sequence" ('324 Pat., Cls. 7, 33) | "a sequence that is selected by a definite computational process, but that satisfies one or more standard tests for statistical randomness" |

| "public data"<br><br>('715 Pat., Cls. 19-22, 35) | "data accessible to all or substantially all users of a public network" |
|---|---|
| "private data"<br><br>('715 Pat., Cls. 1, 17, 19-22, 33) | "data accessible to one or more authorized parties" |
| "integrated data"<br><br>('715 Pat., Cls. 1, 6-8, 20, 26-29, 35, 40) | "data that includes both public data and private data" |

(Dkt. No. 54, Apr. 8, 2016 Joint Claim Construction and Prehearing Statement, Ex. A, at 1.)

## IV. CONSTRUCTION OF DISPUTED TERMS

### A. "transaction information"

| Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary. Plain and ordinary meaning.<br><br>Alternatively, information regarding a transaction | "information based upon transaction data" |

(Dkt. No. 54, Ex. A, at 2; Dkt. No. 58, at 5; Dkt. No. 61, at 5.) The parties have submitted that this term appears in Claims 1-4, 7, 9, 10, and 13 of the '324 Patent. (Dkt. No. 54, Ex. A, at 2.)

(1) The Parties' Positions

Plaintiffs argue that Defendants' proposal "unnecessarily differentiates between 'information' and 'data,'" and "the addition of 'based on' implies that the 'transaction information' must somehow be derived from some underlying data through some unstated calculus." (Dkt. No. 58, at 6.)

Defendants respond that Plaintiffs' proposal "is overly broad and finds no support in the intrinsic record." (Dkt. No. 61, at 5.) Defendants submit that "each time 'transaction

information' is described in the 324 Patent specification it is described as information *based* upon *transaction data*, not simply as information regarding a transaction . . . ." (*Id.*)

Plaintiffs reply that the specification discloses both human-readable and computer-readable transaction information, and Defendants "do[] not point to any portion of the intrinsic record that limits 'computer-readable transaction information' to information 'based upon transaction data.'" (Dkt. No. 62, at 1).

(2) Analysis

Claim 1 of the '324 Patent, for example, recites (emphasis added):

1. A database management method comprising the steps of:
 receiving and storing *transaction information* associated with a nonpredictable bar code, the *transaction information* generated by a transaction terminal;
 receiving a request for the *transaction information* including data associated with the nonpredictable bar code;
 retrieving the *transaction information* based upon the nonpredictable bar code; and
 communicating the *transaction information*.

The specification discloses:

The *human-readable transaction information 34 is based upon the transaction data* entered into the point of sale terminal 20. The human-readable *transaction information 34* can include a printed representation of a list of items in a transaction, quantities of the items, dates and times associated with the items, charges or credits associated with the items, and names of parties involved in the transaction.

* * *

The *human-readable transaction information 34* supported by the member 32 includes information 80 identifying the fictitious hotel, information 82 identifying the fictitious end user, and information 84, 86, 88, and 90 for four transaction items. Each set of the information 84, 86, 88, and 90 can include a date, a name, a category, and an amount for its corresponding item.

'324 Patent at 2:65-3:4 & 6:36-44 (emphasis added); *see id.* at 3:54-56 ("Based upon the transaction information received thereby, the computer 44 stores computer-readable transaction information 46 in a database 50.").

These disclosures of "*human-readable* transaction information" imply that transaction information is not necessarily human-readable. *See Phillips*, 415 F.3d at 1314 ("the claim in this case refers to 'steel baffles,' which strongly implies that the term 'baffles' does not inherently mean objects made of steel"). Indeed, the specification also discloses "computer-readable transaction information." *See, e.g.,* '324 Patent at 3:55-56.

Further, at the July 1, 2016 hearing, Defendants submitted that the specification discloses that "transaction data" is data that is entered into a point-of-sale terminal, and Defendants urged that "transaction information" must be at least partially derived from such transaction data. *See* '324 Patent at 2:44-47, 2:65-66 & 10:3-9. On balance, requiring "transaction information" to be derived from transaction data that was entered into a point-of-sale terminal would improperly limit the disputed term to a particular aspect of what is disclosed as merely "an embodiment of an accounting system in accordance with the present invention." *Id.* at 2:41-42. Also, at the July 1, 2016 hearing, Defendants acknowledged that transaction information could include something like a telephone number of a retail store even if that telephone number was not entered into a point-of-sale terminal and was not associated with only a specific transaction.

To make these findings more explicit, construction is appropriate to clarify that "transaction information" need not necessarily be derived from transaction data but rather need merely be information regarding a transaction. *See TQP Dev., LLC v. Merrill Lynch & Co., Inc.*, No. 2:08-CV-471, 2012 WL 1940849, at *2 (E.D. Tex. May 29, 2012) (Bryson, J.) ("The Court

believes that some construction of the disputed claim language will assist the jury to understand the claims.").

The Court accordingly hereby construes **"transaction information"** to mean **"information regarding a transaction."**

## B. "nonpredictable bar code"

| Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary.  Plain and ordinary meaning.<br><br>Alternatively, a barcode with information encoded such that the barcode is nonpredictable | "a bar code encoding one or more characters which are not determinable by unauthorized parties"[1] |

(Dkt. No. 54, Ex. A, at 2; Dkt. No. 58, at 6-7; Dkt. No. 61, at 6.)  The parties have submitted that this term appears in Claims 1-4, 7, 9, 10, and 13 of the '324 Patent.  (Dkt. No. 54, Ex. A, at 2.)

(1)  The Parties' Positions

Plaintiffs argue that Defendants' proposal is improperly "limited to one benefit of using a nonpredictable bar code."  (Dkt. No. 58, at 7.)  Plaintiffs argue that such disclosed embodiments, as well as the disclosures in patents incorporated by reference, are merely "exemplary."  (*Id.*, at 8.)  Further, Plaintiffs argue, Defendants' proposed reference to "characters" is improper because: "The encoded characters of the bar code are not what the patent seeks to protect from unauthorized access.  Instead, it is the 'transaction information' that is inaccessible to unauthorized parties."  (*Id.*, at 9.)  Finally, Plaintiffs argue that "the nonpredictable bar code need

---

[1] Defendants previously proposed: "Bar code formed from a series of numeric or alphanumeric characters where it is computationally infeasible to predict what the next series of characters will be given complete knowledge of the algorithm or hardware used to generate the series and knowledge of all previous series."  (Dkt. No. 54, Ex. A, at 2.)

not encode *only* nonpredictable data. Instead, predictable data can be included for encoding, such as an Internet address." (*Id.*, at 10.)

Defendants respond that whereas Plaintiffs fail to define "nonpredictable," Defendants "propose[] a construction that provides the jury with a simple definition that is supported by the specification and not limited to a preferred embodiment." (Dkt. No. 61, at 6.) Defendants emphasize the contrast in the specification with "predictable" bar codes, which although generated by a process that is not public are nonetheless "'predictable' as that term is used in the 324 Patent because unauthorized parties studying a series of, for example, Sears & Roebuck store receipts could determine the format being used to generate the receipts." (*Id.*, at 7.) Defendants also argue that Plaintiffs' proposal fails to "define the persons to whom the bar code is to be nonpredictable," which Defendants argue is important because the specification discloses that a nonpredictable bar code can be created by a "pseudorandom process." (*Id.*, at 8-9.) Defendants explain that "all pseudorandom processes are deterministic, which means that given full knowledge of their inputs (including the seeds), anybody with knowledge of the algorithm can compute the outputs." (*Id.*, at 9.) Finally, Defendants submit that "[t]he focus on 'unauthorized parties' in the proposed construction excludes from the definition codes predictable to authorized parties that, for example, know how the codes are generated (algorithm and seed), or who rightfully have access to the bar code on the receipt or card bearing the bar code." (*Id.*, at 11.)

Plaintiffs reply that "nonpredictable" simply means "not predictable," and "[a] lay jury can understand how to apply those words." (Dkt. No. 62, at 3.) Plaintiffs also urge that Defendants "rel[y] on expert testimony that it did not timely disclose," and Plaintiffs argue that "Dr. Jakobsson's declaration does not support [Defendants'] new position." (*Id.*, at 3 & 8.)

Further, Plaintiffs argue, "at no point does the specification define nonpredictable . . . [to] require[] the information be 'undeterminable' (versus 'practically inaccessible')." (*Id.*, at 4 (citing '324 Patent at 4:62-64).)

<u>(2)  Analysis</u>

As a threshold matter, Plaintiffs have challenged the timeliness of certain opinions of Defendants' expert, Dr. Markus Jakobsson, in particular as to paragraph 17 of the expert's declaration.  (*See* Dkt. No. 62, at 5 & 7-8; *see also* Dkt. No. 61, Ex. E, June 3, 2016 Jakobsson Decl.)  The opinions that Plaintiffs have challenged do not alter the Court's analysis.

Claim 1 of the '324 Patent, for example, recites (emphasis added):

1.  A database management method comprising the steps of:
    receiving and storing transaction information associated with a *nonpredictable bar code*, the transaction information generated by a transaction terminal;
    receiving a request for the transaction information including data associated with the *nonpredictable bar code*;
    retrieving the transaction information based upon the *nonpredictable bar code*; and
    communicating the transaction information.

The specification discloses "nonpredictable" bar codes as follows:

Preferably, the machine-readable data 36 includes a nonpredictable bar code to identify the transaction.  *A nonpredictable bar code can be formed by converting a nonpredictable series of numeric characters or a nonpredictable series of alphanumeric characters to a bar code representation in accordance with a bar code standard.*  A nonpredictable series of characters can be formed by any of the code generators described in U.S. Pat. Nos. 4,599,489, 4,720,860, and 5,168,520 which are hereby incorporated by reference into this disclosure.

*Generally, the nonpredictable bar code is generated using either a random process or a pseudorandom process.*  Embodiments of methods and systems for generating a random or a pseudorandom bar code are described in the application entitled "Bar Code Display Apparatus" which is incorporated by reference into this disclosure.  It is noted that the term "pseudorandom" describes entities that are selected by a definite computational process, but that satisfy one or more standard tests for statistical randomness.

* * *

　　Preferably, the computer-readable transaction information 46 is indexed by a
　　*nonpredictable code* encoded in the machine-readable data 36.  By making the
　　code *nonpredictable*, the computer-readable transaction information 46 is
　　*practically inaccessible by unauthorized parties.*

　　　　　　* * *

　　Because the various embodiments of the present invention associate a
　　nonpredictable bar code with a transaction receipt, they provide a significant
　　improvement in that transaction data associated with the transaction receipt can be
　　accessed by an end user *without concern of access by unauthorized parties.*

'324 Patent at 3:18-36, 4:60-64 & 11:7-12 (emphasis added).

　　On balance, the disclosed results that transaction information is "practically inaccessible

by unauthorized parties" and can be accessed "without concern of access by unauthorized

parties" relate to a particular, potentially-resulting benefit that should not be imported into the

claims.  *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 908 (Fed. Cir. 2004) ("The fact

that a patent asserts that an invention achieves several objectives does not require that each of the

claims be construed as limited to structures that are capable of achieving all of the objectives.");

*see also Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1325 (Fed. Cir. 2008) ("[I]t is generally not

appropriate to limit claim language to exclude particular devices because they do not serve a

perceived purpose of the invention.") (citation and internal quotation marks omitted).

　　Further, the specification discloses that a bar code may include a predictable portion as

well as a nonpredictable portion:

　　The machine-readable data 36 includes a nonpredictable bar code 92 to identify
　　the transaction.  Preferably, the nonpredictable bar code 92 provides information
　　for automatically linking the network access apparatus 56 to a resource or a
　　destination (such as a Web page) provided by the computer 44.  In this case, the
　　nonpredictable bar code 92 can encode an electronic address such as a URL
　　(uniform resource locator), a URN (a uniform resource name), or an IP (Internet
　　Protocol) address.

*A first portion of the electronic address can be fixed and predictable*, e.g. "www.mot.com/", *while a second portion of the electronic address is nonpredictable*, e.g. "598843631937665892". When concatenated, the electronic address "www.mot.com/598843631937665892" identifies the computer-readable transaction information 46 for the hotel stay.

'324 Patent at 6:46-61 (emphasis added). This disclosure thus characterizes a bar code as a whole as being "nonpredictable" even if a portion of the bar code is "predictable." At the July 1, 2016 hearing, Defendants acknowledged this disclosure and maintained simply that at least a portion of the bar code must be nonpredictable. Nonetheless, Defendants' proposal, which appears to require that *none* of the characters encoded by the bar code can be determined, is thus disfavored.

Finally, the discussions of prior art in the specification, as well as in the prosecution history, cited by Defendants, do not adequately support Defendants' proposed construction because no clear definition or disclaimer is apparent. Although the disputed term requires that a bar code is not predictable, the disputed term does not require that the bar code cannot be determined by an unauthorized party under *any* circumstances. That is, Defendants have not demonstrated that predictability necessarily turns upon authorization.

Instead, the specification and the prosecution history indicate that a bar code associated with a particular transaction is "nonpredictable" if the bar code cannot be predicted or at least cannot feasibly be predicted. (*See* '324 Patent at 1:51-60; *see also* Dkt. No. 61, Ex. C, Office Action, at 4; *id.*, Ex. D, Mar. 30, 1999 Office Action, at 5-6.) Along these lines, the specification discloses as examples that the bar code may be truly random (such that it is impossible to predict the bar code associated with particular transaction information) or the bar code may be "pseudorandom" such that even though it may be theoretically possible to predict the bar code, as a practical matter it is simply too difficult to do so. *See* '324 Patent at 3:28-36 (quoted above).

The Court therefore hereby construes **"nonpredictable bar code"** to mean **"bar code that cannot be predicted or that is infeasible to predict."**

## C. "private transactional data"

| Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary.  Plain and ordinary meaning. | Indefinite |

(Dkt. No. 54, Ex. A, at 3; Dkt. No. 58, at 11; Dkt. No. 61, at 11.)  The parties submitted that this term appears in Claims 17 and 33 of the '715 Patent, although since then Plaintiffs have disclaimed Claim 17.  (Dkt. No. 54, Ex. A, at 3; Dkt. No. 61, Ex. A, May 3, 2016 Disclaimer in Patent Under 37 CFR 1.321(a).)  Thus, only Claim 33 of the '715 Patent remains at issue.

(1)  The Parties' Positions

Plaintiffs argue that this term "is simply private data associated with a transaction," and Plaintiffs note that the parties have agreed upon a construction for "private data."  (Dkt. No. 58, at 11.)

Defendants respond that although the parties have agreed upon the meaning of "private data" in independent claim 20, "the subset of private data encompassed by dependent claim 33, private *transactional data*, is unsupported by the specification and thus indefinite."  (Dkt. No. 61, at 12.)  Defendants argue: "Whether this term would encompass types of data that may or may not be public – such as a user's address and telephone number – is uncertain under Plaintiffs' explanation.  Indeed, the specification provides no teaching as to what constitutes 'transactional data,' let alone 'private transactional data,' and thus fails to inform those skilled as to the meaning of this term."  (*Id.*)

Plaintiffs reply that Defendants' argument that (in Plaintiffs' words) "'private transactional data' does not appear word-for-word in the text of the specification" is, Plaintiffs

argue, "a written-description-type argument, and one the Federal Circuit has rejected." (Dkt. No. 62, at 9 (citing *Bancorp Servs., LLC v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1372 (Fed. Cir. 2004)).)

(2)  Analysis

The Supreme Court of the United States has "read [35 U.S.C.] § 112, ¶ 2 to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (citations and internal quotation marks omitted), *abrogated on other grounds by Nautilus,* 134 S. Ct. 2120.

Claims 20 and 33 of the '324 Patent recite:

20.  A method of integrating and delivering data available over a network, said method including the steps of:
> acquiring public data from at least one publicly available data store coupled to said network, wherein said public data is determined by *private data*;
> acquiring *said private data* from at least one private data store coupled to said network;
> integrating said public data and *said private data* to form integrated data; and
> delivering said integrated data to a user system.

* * *

33.  The method of claim 20, wherein acquiring private data includes acquiring *private transactional data*.

To the extent, if any, that the parties dispute whether it is the transactional data or the transaction itself that must be private, the context of the disputed term is sufficiently clear that the word "private" refers to the data rather than the transaction.

As to Defendants' indefiniteness argument, even where "the entire term . . . is not defined in the patent," and the parties have not identified "any industry publication that defines the term," "[n]onetheless, the components of the term [may] have well-recognized meanings, which allow the reader to infer the meaning of the entire phrase with reasonable confidence." *Bancorp*, 359 F.3d at 1372.

At the July 1, 2016 hearing, Defendants reiterated that "private" is a subjective term and that there is no way to know whether a particular piece of information, such as a person's home address or e-mail address, is being kept private or is publicly available. Defendants argued that the specification provides no guidance as to whether or not such information is "private" for purposes of this disputed term.

As to "private data," however, the specification discloses for example:

> Private data on the screen shot in FIG. 6 includes data under the "MY ACCOUNTS" heading, including current balances, recent payments and membership rewards points available.

'715 Patent at 9:14-17; *see id.* at Fig. 6. The parties appear to agree that the "private transactional data" in Claim 33 is a subset of the "private data" recited in Claim 20. (*See* Dkt. No. 61, at 12 (arguing that "the subset of private data encompassed by dependent claim 33, private transactional data, is unsupported by the specification and thus indefinite"); Dkt. No. 62, at 9 ("It is . . . undisputed that private transactional data is one type of private data.").) As noted above, the parties have agreed that "private data" means "data accessible to one or more authorized parties." (Dkt. No. 54, Ex. A, at 1.)

Plaintiffs also point out that in a recent Petition for Covered Business Method Review ("CBM Petition") at the United States Patent and Trademark Office, Defendants challenged definiteness as to other terms but not as to "transactional data." (*Compare* Dkt. No. 58-3, at 79

*with* Dkt. No. 62, Ex. C, at 7 ("The '715 Patent's specification makes clear that the recited 'transactional data' relates to financial transactions. Specifically, 'transactional data' is discussed in detail in the specification with regard to FIG. 3.").)

The absence of a definiteness challenge as to "private transaction data" in Defendants' CBM Petition is of limited probative weight, if any. Nonetheless, Defendants' statement that "transaction data" is "discussed in detail in the specification" (*id.*) weighs against finding indefiniteness here because Defendants have not demonstrated that limiting such data to "private" data renders the term any less understandable, particularly given that the parties have agreed upon a construction for "private data."

The Court therefore hereby rejects Defendants' indefiniteness argument. No further construction is necessary. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy."); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims."); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010) ("Unlike *O2 Micro*, where the court failed to resolve the parties' quarrel, the district court rejected Defendants' construction."); *ActiveVideo Networks, Inc. v. Verizon Commcn's, Inc.*, 694 F.3d 1312, 1326 (Fed. Cir. 2012); *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015).

The Court therefore hereby construes **"private transactional data"** to have its **plain meaning**.

**D. "spending habit data" and "promotion data"**

| Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary.  Plain and ordinary meaning. | Indefinite |

(Dkt. No. 54, Ex. A, at 3; Dkt. No. 58, at 13.)  The parties have submitted that these terms appear in Claim 19 of the '715 Patent.  (Dkt. No. 54, Ex. A, at 3.)

Plaintiffs have disclaimed the claim in which these terms appear.  (*See* Dkt. No. 61, Ex. A, May 3, 2016 Disclaimer in Patent Under 37 CFR 1.321(a).)  The Court therefore need not address these terms.

**V.  CONCLUSION**

The Court adopts the constructions set forth in this opinion for the disputed terms of the patents-in-suit.

The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.  Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

Within thirty (30) days of the issuance of this Memorandum Opinion and Order, the parties are hereby ORDERED, in good faith, to mediate this case with the mediator agreed upon by the parties.  As a part of such mediation, each party shall appear by counsel and by at least one corporate officer possessing sufficient authority and control to unilaterally make binding decisions for the corporation adequate to address any good faith offer or counteroffer of settlement that might arise during such mediation.  Failure to do so shall be deemed by the Court

as a failure to mediate in good faith and may subject that party to such sanctions as the Court

deems appropriate.

**So ORDERED and SIGNED this 12th day of July, 2016.**


RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

**APPENDIX A**

| Disputed Term | Plaintiffs | Defendants | Construction |
|---|---|---|---|
| A. "transaction information"  ('324 Pat., Cls. 1-4, 7, 9, 10 & 13) | No construction necessary. Plain and ordinary meaning.  Alternatively, **information regarding a transaction** | "information based upon transaction data" | **"information regarding a transaction"** |
| B. "nonpredictable bar code"  ('324 Pat., Cls. 1-4, 7, 9, 10 & 13) | No construction necessary. Plain and ordinary meaning.  Alternatively, a barcode with information encoded such that the barcode is nonpredictable | "a bar code encoding one or more characters which are not determinable by unauthorized parties"[2] | **"bar code that cannot be predicted or that is infeasible to predict"** |
| C. "private transactional data"  ('715 Pat., Cls. 19,[3] 33) | **No construction necessary. Plain and ordinary meaning.** | Indefinite | **Plain meaning**  **(Reject Defendants' indefiniteness argument)** |

---

[2] Defendants previously proposed: "Bar code formed from a series of numeric or alphanumeric characters where it is computationally infeasible to predict what the next series of characters will be given complete knowledge of the algorithm or hardware used to generate the series and knowledge of all previous series."  (Dkt. No. 54, Ex. A, at 2.)

[3] Plaintiffs have since disclaimed Claim 19, so this term is no longer at issue as to Claim 19.